**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| K.A.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **Civil Action No. 25-02757**<br><br>**OPINION** |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff K.A. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning October 1, 2004. A hearing was held before ALJ Marguerite Toland (the "ALJ") on March 28, 2023 and the ALJ issued an unfavorable decision on January 3, 2024. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal. Of note, Plaintiff's date last insured ("DLI") was June 30, 2009, so the relevant disability period ("Disability Period") was from October 1, 2004 through June 30, 2009.

In the decision of January 3, 2024, the ALJ found, at step two, that Plaintiff had the following severe impairments: hypertension, obstructive sleep apnea (OSA) and morbid obesity. At step three, the ALJ found that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with specific non-exertional limitations, and that Plaintiff had no past relevant work. Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed, and the case remanded, because the ALJ's RFC assessment was flawed for two reasons. Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because: (1) the ALJ "failed to include significant limitations resulting from Asadurian's severe impairments and failed to provide an adequate discussion rejecting those limitations," (Pl.'s Br. at 5-10), and (2) the ALJ was "unreasonable" in finding Dr. Wasserman's opinion unpersuasive. (Pl.'s Br. at 8-9, 11-17).

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff show that, but for the error, he might have proven his disability. In other words, when appealing

a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful.

Plaintiff argues first that the ALJ committed error in formulating the RFC by failing "to include significant limitations resulting from [Plaintiff]'s severe impairments and fail[ing] to provide an adequate discussion rejecting those limitations." (Pl.'s Br. at 5-10). The ALJ determined that Plaintiff retained the RFC to perform sedentary work with the following limitations:

> [H]e could not climb ropes, letters, scaffolds or work at heights. He could not operate dangerous machinery (defined as machines that cut or share). He should have no concentrated exposure to dust fumes pulmonary irritants or temperature extremes. He was be limited to low stress work (defined as unskilled work involving simple, routine tasks and having no fast production rate pace such as assembly line work).

(Tr. at 1862).

Plaintiff first focuses on what he perceives to be a lack of limitations in the RFC relating to his obstructive sleep apnea. Plaintiff's brief runs through the most severe of his self-reported complaints—that he stopped working as a truck driver after he fell asleep while driving a truck, lost a job due to falling asleep in front of his boss, and that neither his CPAP nor BiPAP machines helped much—and then asserts that the ALJ erred by "minimiz[ing] the [e]ffects of this impairment" and relying on "what the records did not say" in formulating the RFC. (Pl.'s Br. at 6-7). In other words, on this challenge, Plaintiff essentially takes issue with what he believes to be insufficient weighting of his self-reported complaints.

This argument fails because the ALJ adequately considered Plaintiff's subjective complaints, explained why she found them somewhat overstated and unsupported by evidence of record, and did in fact include limitations related to Plaintiff's obstructive sleep apnea in the RFC.

The ALJ began the RFC assessment by considering Plaintiff's subjective statements regarding his sleep apnea, including that he left his job as a truck driver after he fell asleep at the wheel and got into an accident. (Tr. at 1863). The ALJ then looked to the medical records and determined that "claimant's statements about the intensity, persistence, and limiting effects of his symptoms [were] inconsistent with the objective evidence." (Id.). The ALJ considered medical evidence as far back as back 2001, three years prior to the onset of the Disability Period. Considering the medical record evidence from the Disability Period, the ALJ noted:

> Later treatment on November 4, 2004, indicate "sleep apnea, CPAP" (1F/17). Treatment records dated January 23, 2005, has a note stating they tried to call the claimant and he was in the Dominican Republic, and they would talk later (1F/9). On April 26, 2005, the claimant's treatment notes reveal he weighed 311 pounds, and the notes indicates splinters in the left foot, morbid obesity, and small abscess on his back (1F/15). On October 17, 2007, the record indicates he had morbid obesity, hypertension, and OSA and he was started on Benicar (for hypertension) and the notes indicate "ENT referral for close follow up evaluation and repeat sleep study." Follow up treatment records on April 6, 2010, show that he was taking Benicar, Toprol, and Norvasc for hypertension (1F/8).

(Id. at 1864). The ALJ also noted that the record included "no mention of [Plaintiff] losing his job due to falling asleep." (Id. at 1863).

In short, the ALJ clearly examined the medical records to look for corroboration of Plaintiff's self-reports, but found the medical evidence of record insufficiently strong to support the furthest extent of Plaintiff's subjective complaints, and accordingly, was skeptical of adopting those complaints in their entirety. Despite Plaintiff's objections, this was an entirely appropriate exercise of the ALJ's discretion. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence"); Rock v. Comm'r of Soc. Sec., 2021 WL 2177512, at *5 (D.N.J. May 28, 2021)

(explaining that the ALJ must consider the extent to which the claimant's "self-reported symptoms can reasonably be accepted as consistent with the objective medical and other evidence") (quoting 20 C.F.R. § 404.1529(a)). Additionally, Plaintiff's contention that the ALJ improperly relied on "silence in the record" to infer inconsistency between the subjective complaints and the objective medical evidence is incorrect. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). The medical evidence from the period prior to the DLI supports the conclusion that sleep apnea was a severe impairment, as the ALJ found at step two, but not that its impacts on Plaintiff's ability to function were disabling.

In any event, despite being skeptical of the disabling effect of Plaintiff's sleep apnea, the ALJ did include limitations relating to Plaintiff's obstructive sleep apnea in her formulation, thus incorporating the impairments resulting from his sleep apnea. As the ALJ explained:

> The medical records show that the claimant's obesity, obstructive sleep apnea and hypertension, in combination, limit his ability to perform work related activity. Thus, after reviewing all of the medical evidence, the RFC limits the claimant to sedentary work with the additional limitation that he could not climb ropes, letters, scaffolds or work at heights. He could not operate dangerous machinery (defined as machines that cut or share) due to his sleep apnea in combination with his obesity . . . to accommodate his complaints of fatigue due to his sleep apnea, the RFC limits the claimant to low stress work (defined as unskilled work involving simple, routine tasks and having a fast production rate pace such as assembly line work).

(Tr. at 1864). In sum, the ALJ conducted a sufficient analysis of Plaintiff's subjective complaints relating to his sleep apnea, and, despite finding those complaints somewhat overstated, still included multiple limitations designed to accommodate Plaintiff's obstructive sleep apnea.

Plaintiff also asserts that the ALJ's failure to incorporate or discuss limitations related to

his edema, which he stated began before 2004 and required that he elevate his legs while sitting and wear special stockings, dooms the RFC. (Pl.'s Br. at 9). At the hearing, Plaintiff testified that before 2004, he had leg swelling which required him to raise his legs when sitting and that he was given special compression stockings. (Id. at 1890). Plaintiff now argues that the ALJ erred in not discussing or incorporating this limitation into the RFC. The primary problem with Plaintiff's argument is that he fails to point to medical evidence of record which supports his claim. Here, and elsewhere, it is the responsibility of Plaintiff, not the Court, to scour the record for evidence to support his claim of disability. Amy F. v. Comm'r of Soc. Sec. Admin., No. CV 20-11613 (ZNQ), 2022 WL 1748010, at *5 (D.N.J. May 31, 2022) ("[T]he Third Circuit has warned claimants that they 'bear the responsibility to comb the record and point the Court to the facts that support their arguments.'") (quoting United States v. Claxton, 766 F.3d 280, 307 (3d Cir. 2014)). If there is medical evidence which supports the proposition that Plaintiff had a disabling edema during the Disability Period, the Court has not seen it, and Plaintiff needed to have pointed it out to the Court, not the reverse.

In fact, even the testimony to which Plaintiff cites also fails to establish this harm occurred during the Disability Period of October 2004 through June 2009. (See Id. at 1890).[1] And though

---

[1] See the following exchange:

[Counsel]: Do you remember when you were taken to a hospital?

[Plaintiff]: I would say like early 2000's, late 90's.

. . .

[Counsel]: When you sat down, do you recall if your doctor told you, around that time, if you were supposed to elevate your legs?

[Plaintiff]: Yes, definitely. I had to elevate my legs. They gave me special stockings to put on . . .

ALJ: Counsel, I don't see any of this in Dr. Wasserman's notes, about the leg swelling . . ."

counsel promised to provide supporting documentation to the ALJ following the hearing, as far as the Court can tell, counsel has not done so—and if counsel has done so, it has not been brought to the attention of the Court, as Plaintiff's brief on this point cites only to Plaintiff's testimony as evidence of his claim. (See Pl.'s Br. at 9).

Plaintiff's second broad attack on the ALJ's RFC is that she erred in finding Dr. Wasserman's treating source opinion from 2020 unpersuasive. Plaintiff contends that the ALJ erred because she "failed to provide adequate rationale for finding Dr. Wasserman's opinion[] unpersuasive. (Pl.'s Br. at 17). The Court disagrees.

In formulating an RFC, an ALJ must articulate her determination of the persuasiveness of a medical provider's opinion, with a focus on its supportability and consistency. See 20 C.F.R. § 404.1520c(b), (b)(2) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . . The factors of supportability . . . and consistency. . . are the most important factors we consider . . . ."). An ALJ "need not reiterate the magic words 'support' or 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency through her analysis of which doctors were more persuasive." Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024). The ALJ complied with her regulatory requirement to explain her consideration of Dr. Wasserman's opinion, and even if she had erred, that error would be no more than harmless and Plaintiff's argument would fail under Shinseki.

The ALJ analyzed Dr. Wasserman's opinion as follows:

> I find the opinion of Dr. Wasserman not persuasive (32F). The post hearing Medical Source Statement appears to be dated June 9, 2020, and indicates he has treated claimant for "30 years" but does not indicate exact dates of treatment. He indicates diagnosis of "severe

---

[Counsel]: [indicates that he will get evidence to the ALJ in the future]

(Tr. at 1890).

> apnea, bipolar, morbid obesity" and list symptoms are severe sleepiness and depression. He notes that "pt had 2 sleep studies in 2002 and 2010. They showed severe sleep apnea that caused him to fall asleep and be fired from work" (32F/3). However, this is a repeated statement of claimant's, not the doctor's opinion. He notes that the claimant can walk 2 city blocks; can sit no more than 2 hours; stand no more than one hour; and can sit, stand, and walk less than two hours total per day. Dr. Wasserman notes that in addition to normal breaks every two hours, patient sometimes need to take unscheduled breaks during the workday? This question is not answered with yes/no, Dr. Wasserman just instigates "falls asleep". It does not clearly indicate how much he can lift.
>
> Dr. Wasserman indicates he would have good days and bad days; and that his impairments are reasonably consistent with his symptoms and functional limitations; lastly it notes that he "suffers from stress". The rest of the form is not clearly marked. I find that this RFC assessment is not persuasive. There is no clinical evidence referred to and Dr. Wasserman does not even mention the use of a CPAP machine [in fact, exhibit 1F/9 indicates he was not using CPAP]; and there is no sleep study report. The date of Dr. Wasserman's report of June 9, 2020, is 11 years past the DLI and the statements made are vague and are insufficient in "bridging the gap" and establishing causality between claimant sleep apnea and his inability to work. "Falls asleep" is too vague. Dr. Wasserman does not indicate for how long, how often, does it happen during the workday? There is no specificity in the MSS, so these limitations can't be relied on. Lastly, the opinion is inconsistent with subsequent evidence (2F, 3F).

(Tr. at 1864-65). This thorough explanation provides more than enough for this Court to discern why the ALJ found Dr. Wasserman's opinion unpersuasive. The ALJ rightly found Dr. Wasserman's opinion vague, undeveloped, lacking in evidentiary support, and not consistent with any other evidence. For example, Dr. Wasserman indicated that Plaintiff could not sit and stand or walk for more than two total hours in an eight-hour working day. (Tr. at 61). But, as the ALJ notes, this assessment is not supported by any "clinical evidence." (Tr. at 1865). Plaintiff counters that Dr. Wasserman's opinion is fully supported by clinical evidence because it refers to two sleep studies which showed severe sleep apnea, but neither of these studies occurred during the

Disability Period, and neither appears in the record nor in Dr. Wasserman's clinical notes in the record. (Pl.'s Br. at 13). Plaintiff bears the burden of proof of disability at step four and has cited no medical evidence of record that supports his claims of limitations to his ability to sit, stand, or walk during the disability period. The focus at this step is not on whether Plaintiff had sleep apnea—which the ALJ agreed he did—but instead on what functional limitations flowed from that impairment. Plaintiff has not pointed to specific medical evidence from the Disability Period which supports Dr. Wasserman's highly restrictive opinion that was written over ten years later.

Not only has Plaintiff failed to point out medical evidence from the disability period that supports his claims of functional limitations at step four, but also, a look through Dr. Wasserman's treatment records shows that the ALJ's determination—that Dr. Wasserman's 2020 opinion is unsupported and not consistent with any medical evidence—is itself supported by substantial evidence. For example, in 2009, Dr. Wasserman saw Plaintiff for an annual check-up and reported that Plaintiff continued to have apnea, but the treatment notes make no mention of an inability to function during the daytime. (Tr. at 287). Additionally, despite Dr. Wasserman's 2020 statement that Plaintiff was "fired from work" due to his sleep apnea, (Tr. at 60), nothing in Dr. Wasserman's treatment record from the Disability Period substantiates this claim, nor does Plaintiff point to any contemporaneous evidence which does so. As a general matter, none of Dr. Wasserman's treatment records from the Disability Period appear to support the opinion he provided eleven years later. (See Tr. 287-295). Plaintiff has pointed to no evidence of record that supports a challenge to the ALJ's determination, during the persuasiveness analysis, that Dr. Wasserman's opinion was not persuasive for lack of supporting clinical evidence. The ALJ's determination that Dr. Wasserman's opinion was not persuasive is supported by substantial evidence. Ultimately, the ALJ determined that Plaintiff's self-reports of disability were not fully supported by the medical

evidence of record, and this determination is supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that Plaintiff was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

s/ Stanley R Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: August 19, 2026